**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CRIMINAL ACTION NO.  3:18-CR-2-CRS**

**UNITED STATES OF AMERICA,**                                                                               **Plaintiff,**

**v.**

**MICHAEL D. THOMPSON,**                                                                                    **Defendant.**

### Report and Recommendation

Defendant Michael Thompson ("Thompson") has filed a motion to suppress evidence obtained from a search of a vehicle he was traveling in as a passenger.  (DN 14.)  The United States timely responded (DN 17), and the Court held a hearing on the matter on June 21, 2018 (DN 20).  For the reasons stated below, the undersigned **RECOMMENDS** that Thompson's motion be DENIED.

### I. Factual Background

At the hearing, the Court heard testimony from one witness, Detective Chris Frisby of the Louisville Metro Police Department's Ninth Mobile Division.  (DN 21, #52.)  Detective Frisby testified that on September 25, 2017, he and other members of the Ninth Mobile Division were assigned to monitor a funeral home while a service for an alleged local gang member was in progress[1].  (*Id*. at 53.)  Around noon, Detective Frisby observed a black Chevy with tinted windows pull into the funeral home's parking lot.  (*Id*. at 54.)  Thompson was a passenger in the car, and Will Stephenson ("Stephenson") was driving; Detective Frisby knew the two men from previous encounters with them.  (*Id* at 54, 75.)  He also noticed that the front window tint on

---

[1] Detective Frisby noted that the Ninth Mobile was assigned to the funeral home "just for surveillance" purposes in case "something happened."  (DN 21, #53, 59.)

1

their Chevy was in violation of a Kentucky traffic law because it went "beyond the AS1 line on the top of the window." (*Id.*)

Thompson and Stephenson were in the funeral home for a "short time." (DN 21, #54.) Immediately after they left the funeral home in the black Chevy, Detective Frisby and his partner, Detective Cundiff, pulled them over for the window tint violation. (*Id.*) Stephenson was driving the vehicle, and Thompson was riding in the front passenger's seat. (*Id.*) Upon approaching Stephenson on the driver's side door, Detective Frisby noticed that he was "nervous, stuttering, [and] shaking." (*Id.* at 55.) Because of Stephenson's behavior, Detective Frisby and the other officers removed him and Thompson from the vehicle. (*Id.*) Thompson and Stephenson consented to a search of their persons, which did not reveal any contraband, but did not give consent to search their vehicle. (*Id.*) While Detective Cundiff waited by the car, Detective Frisby returned to his vehicle to check for warrants, validate the license plate, and call for canine assistance. (*Id.*) He received word that neither Stephenson nor Thompson had any outstanding warrants[2], and he learned from the car was registered to someone named Paul Leach. (*Id.*) After learning that a canine was not available to assist in the stop, Detective Frisby released Thompson, who then walked down the street and back into the funeral home. (*Id.* at 56.)

After Thompson departed, Detective Cundiff informed Detective Frisby that he had smelled marijuana at the driver side door of the vehicle (where Thompson had been sitting). (DN 21, #56.) Detectives Frisby and Cundiff, along with two other detectives at the scene, proceeded to search the vehicle, finding two firearms in the glove compartment. (*Id.* at 57)

---

[2] Detective Frisby had prior knowledge from previous encounters with Stephenson that at the time of the traffic stop, he was on a home incarceration program through state court. (DN 21, #70.) Based on the fact that Stephenson was in violation of his home incarceration program, Detective Frisby would not have been allowed to release him and let him to drive away. (*Id.* at 71.)

Following a check, the detectives learned that both guns had been reported stolen. (*Id.*) Thompson was arrested inside the funeral home and eventually indicted for being a felon in possession of a firearm. (DN 1.)

## II. Legal Standard

The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures. U.S. CONST. AMEND. IV. The Supreme Court has stated that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). The government implies that one of the few exceptions – the automobile exception – is applicable in this case. (DN 47, #325.) The automobile exception allows law enforcement officers to lawfully search a vehicle without a search warrant if the vehicle is readily mobile and the officers have probable cause to believe that it contains contraband. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Probable cause has been defined in this circuit as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is found to exist when there is a fair probability that evidence of a crime will be located on the premises of the proposed search." *U.S. v. Jackson*, 470 F. 3d 299, 306 (6th Cir. 2006).

## III. Analysis

The parties do not dispute the factual basis behind the traffic stop. (DN 21, #80.) Rather, Thompson bases his argument of illegality primarily on the length of the stop. (DN 14, #30.) He argues that because the detectives already knew that he had illegally tinted windows before they stopped his vehicle, they should have quickly concluded the stop and given Stephenson a ticket

without removing himself and Stephenson from the vehicle. (DN 21, #80.) Thompson asserts that had the detectives simply given Stephenson a ticket and not delayed the stop by requesting his and Stephenson's information, they would not have had to opportunity to smell marijuana and subsequently search Stephenson's car. (*Id*. at 81.) On the other hand, the government argues that Thompson lacks the "standing" required to challenge the search because a defendant may not challenge a search, even if it was conducted illegally, if he did not have a legitimate privacy expectation in the area searched. (DN 17, #37.) Here, the government argues that Thompson did not have a legitimate privacy interest in the glove compartment because not only was he riding as a passenger in the car, but he had no ownership interest in it. (*Id*.)

The Court will address Thompson's argument concerning the illegality of his detention first.

### A. The Length and Scope of the Traffic Stop

Thompson's first argument is that his Fourth Amendment rights were violated when the detectives continued to detain him past the time necessary to complete the mission of the traffic stop which, according to Thompson, should have been to issue Stephenson a citation for having illegally tinted windows. (DN 14, #30.) He invokes the doctrine from *Rodriguez v. U.S.*, in which the Supreme Court held that a traffic stop that exceeds the time needed to handle the matter for which the stop was made is a Fourth Amendment violation. 135 S. Ct. 1609, 1612 (2015). There, the Supreme Court held that an officer's authority for seizure ends when the tasks tied to the traffic infraction are (or should have been) completed – unless the officer has a reasonable suspicion that the vehicle's occupants are involved in criminal activity. *Id*. at 1614. During the hearing, Thompson effectively conceded that the detectives had probable cause to

4

believe that Stephenson had committed a traffic infraction via his illegally tinted windows (despite Thompson's assertion in his motion to suppress that they did not). (DN 21, #80.) As has been the law in this Circuit for some time, an officer may stop a motorist so long as he has probable cause to believe that the motorist committed a traffic infraction. *U.S. v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (citing *U.S. v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)). Regarding the constitutionality of the seizure, the Court will only examine whether its length exceeded what is allowed under *Rodriguez*. Additionally, although the government has argued that Thompson lacks the requisite "standing" to challenge the search of Stephenson's vehicle, he still may contest his seizure before the Court reaches the legality of the search. *U.S. v. Torres-Ramos*, 536 F.3d 542, 549 (6th Cir. 2008); *U.S. v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008). If Thompson can prove that the detectives unreasonably extended the length of the traffic stop, then he still may seek to suppress any of the fruits of the stop – even if he would ordinarily not have a legitimate privacy interest in them.

    The crux of Thompson's argument is that the detectives should have given Stephenson a ticket for having illegally tinted windows without collecting their identification and running a warrant check, especially because the detectives already knew their identities. (DN 21, 80–81.) Thus, Thompson argues that when the detectives ran a warrant check on him and Stephenson, that action went beyond the scope of the reason for the stop. But the Sixth Circuit has previously held that police officers running a warrant check is a routine occurrence during a traffic stop. *See U.S. v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010) (holding that it was not an unnecessary extension of the traffic stop for the officer to get identification from car's occupants and then check to see if either of them had outstanding warrants). Although *Smith* was decided five years

5

before *Rodriquez*, the *Smith* Court relied on earlier Sixth Circuit precedent identical to the Supreme Court's holding in *Rodriquez*. *Id*. (citing *U.S. v. Bell*, 555 F.3d 535 (6th Cir. 2009). *See also U.S. v. Calvetti*, 836 F.3d 654, 665 (6th Cir. 2016); *U.S. v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002)). There is no requirement that an officer complete a traffic stop as fast as he possibly can. Officers may perform other activities during the course of the stop, such as questioning the vehicle's passengers, checking for valid identification, and running a warrant search, so long as those activities do not temporally extend the stop. *Calvetti*, 836 F.3d at 665 (stating that officers may make "ordinary inquiries" incident to the traffic stop, including "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."); *U.S. v. Lash*, 665 Fed. App'x. 428, 430–31 (6th Cir. 2016).

Of course, an officer may not conduct these activities after he has concluded the traffic stop, by either issuing the driver a warning, writing him a ticket, or taking him to jail. *Rodriguez v. U.S.*, 135 S. Ct. 1609, 1613 (2015). But that is not what happened here. After Thompson and Stephenson were searched after giving consent, Detective Frisby returned to his vehicle to run the warrant and plate check and to call in K9 assistance. (DN 21, #55.) After learning that neither Thompson nor Stephenson had any outstanding warrants and that the license plate on the car was valid, he immediately released Thompson, who subsequently left the scene and returned to the funeral home.[3] (*Id*.) There is no evidence to indicate that Thompson was detained any longer than necessary for the detectives to run the warrant and license plate check. As such, the

---

[3] As stated in a previous footnote, Stephenson was not allowed to leave because the detectives knew that he was likely in violation of his home incarceration program. Furthermore, Stephenson was driving on a valid instructional permit, but Thompson did not have a valid driver's license on his person. (DN 17-1, #40.) Stephenson was eventually arrested on scene by home incarceration program officers. (*Id*. at 41.)

length of the seizure was appropriate, and the detectives did not violate Thompson's Fourth Amendment rights in regards to the initial stop and seizure.

### B. Standing to Challenge the Search

In addition to the initial seizure, Thompson also challenges the detectives' search of Stephenson's vehicle. As the search was conducted without a warrant, it is ordinarily the government's burden to demonstrate that there was a valid exception to the warrant requirement. Here, however, the government has launched a collateral attack on Thompson's argument. (DN 17, #37.) Specifically, the United States argues that Thompson lacks a legitimate privacy interest necessary to challenge the search of the vehicle because (1) he was merely a passenger in the vehicle that was searched, not the driver, and (2) he left the scene of the stop before the search occurred. (*Id.*)

It is longstanding Supreme Court precedent that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 134–35 (1978) (citing *Wong Sun v. U.S.*, 371 U.S. 471, 392 (1963)). Thus, a "person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id*. at 134 (citing *Alderman v. U.S.*, 394 U.S. 165, 174 (1969)). Instead, a defendant's "capacity to claim the protection of the Fourth Amendment depends…upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy" in the places searched or the items seized. *U.S. v. Ocampo*, 402 Fed. App'x. 90, 95 (6th Cir. 2010) (quoting *Rakas*, 439 U.S. at 143); *Byrd v. U.S.*, 138 S. Ct. 1518, 1526 (2018). A defendant must satisfy a two-pronged test to show a legitimate

expectation of privacy: he must (1) manifest an actual, subjective expectation of privacy, and (2) society must recognize that expectation as legitimate. *U.S. v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000). The burden of establishing a legitimate privacy interest falls on the proponent of a motion to suppress. *Rakas*, 439 U.S. at 130, n. 1.

It does not appear that the Sixth Circuit has directly addressed the question of whether a defendant has a legitimate expectation of privacy in the glove compartment of a car in which he is a mere passenger. Even so, the Supreme Court and other appellate courts have considered similar issues before. In *Rakas*, the Supreme Court held that passengers who do not have a property or possessory interest in an automobile nor an interest in the property seized do not have a legitimate expectation of privacy when police search a glove compartment. *Rakas v. Illinois*, 439 U.S. 128, 148–49 (1978). In case similar to the one before the Court, the Fifth Circuit determined that a passenger did not have standing to contest a search of the trunk of the car he was riding in. *U.S. v. Cardona*, 955 F.2d 976, 981 (5th Cir. 1992). The Fifth Circuit held that the defendant, a passenger who did not own the vehicle, lacked the requisite privacy interest to challenge the probable cause search of the trunk, which turned up over one hundred pounds of marijuana. *Id*. at 981. *See also U.S. v. Symonevich*, 688 F.3d 12, 21 (1st Cir. 2012) (holding that a passenger did not have a legitimate expectation of privacy in the space beneath his seat, nor did he have a possessory interest in disguised can of narcotics hidden under the seat; thus, he lacked standing to challenge the search of the passenger compartment).

As *Rakas* established, and as *Cardona* and *Symonevich* illustrate, Thompson does not have a legitimate expectation of privacy in either the glove compartment of Stephenson's car or in the stolen handguns found inside. As to the former, there is no evidence to indicate that

Thompson had either a property or possessory interest in the automobile. On the contrary, the record indicates that the vehicle is registered to Paul Leach, who had sold it to Stephenson's girlfriend a few days before Thompson's arrest at the funeral home. (DN 21, #56.) Stephenson's girlfriend even appeared at the scene of the traffic stop to claim the vehicle. (*Id*.) Furthermore, there is no evidence in the record that Thompson had some manner of special permission from Stephenson's girlfriend to use her car or possess it in some other way. The undersigned's analysis of the latter factor leads to a similar conclusion. Thompson has not presented any evidence demonstrating that he had a possessory interest in either of the handguns. Of course, having an ownership interest in the item seized is insufficient in of itself to establish a legitimate privacy interest. *Rawlings v. Kentucky*, 448 U.S. 98, 105–06 (1980) ("[h]ad petitioner placed his drugs in plain view, he would still have owned them, but he could not claim any legitimate expectation of privacy."). But it still plays a factor in determining whether the government violated Thompson's legitimate expectation of privacy. *Id*. at 106. Thompson has not produced any such evidence.

Stated once again, it is Thompson's burden to present evidence demonstrating that he had a legitimate expectation of privacy in the vehicle's glove compartment. *Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980) (citing *Rakas v. Illinois*, 439 U.S. 128, 131 (1978)). Not only has he not done so, but all the evidence available to the undersigned is that Stephenson's girlfriend owned the vehicle. Therefore, the undersigned concludes that Thompson did not have a legitimate expectation of privacy in the vehicle's glove compartment, and as such, his Fourth Amendment rights were not violated. The undersigned does not reach the question of whether the detectives' search itself was legal.

## IV. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** that Thompson's motion to suppress (DN 14) be **DENIED**.

cc: Counsel of record

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Crim. P. 59(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).